# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Suzanne Raylene Figueroa, | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:25-cv-01139 |
| | § | |
| United States of America, et al. | § | |
| Defendant. | § | |

---

## PLAINTIFFS FIRST AMENDED ORIGINAL COMPLAINT

---

Comes now Suzanne Raylene Figueroa, Plaintiff pro se, and respectfully submits this First Amended Original Complaint. This amended filing is offered to clarify the constitutional claims raised in Plaintiff's original pleading, and to incorporate relevant case law and evidentiary support. Plaintiff does not challenge the government's general authority to enforce immigration laws; rather, she brings this action to address the unconstitutional manner in which those laws have been applied. Specifically, the harm inflicted upon U.S. citizens in mixed-status families.

Plaintiff asserts that the named Defendants have violated her rights and those of her three minor U.S. citizen children under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff asserts that these injuries are not speculative, they are active, ongoing, imminent and irreparable.

In support of this Amended Complaint, Plaintiff respectfully shows the following:

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................2

TABLE OF AUTHORITIES.............................................................................................4

I.   INTRODUCTION..................................................................................................7

II.  JURISDICTION AND VENUE ...........................................................................7

III. PARTIES.................................................................................................................8

IV.  FACTUAL BACKGROUND ..............................................................................10

V.   STANDARD OF REVIEW..................................................................................11

VI.  LEGAL STANDARDS AND CONSTITUTIONAL VIOLATIONS.............................13

A.   Fifth and Fourteenth Amendments: Substantive Due Process – Coerced Expatriation and Family
Integrity.................................................................................................................... 13

B.   Equal Protection and Disparate Treatment of Mixed-Status Families.......................... 15

   i.    Unequal Burdens on U.S. Citizen Families ............................................................. 15

   ii.   Disparate Treatment in Civil Contexts .................................................................... 17

C.   Eighth Amendment and the Concept of Excessive Civil Penalties Imposed on U.S. Citizens ............ 17

   i.    Civil Enforcement Must Still Be Proportional .......................................................... 18

   ii.   Constructive Deportation as Cruel and Disproportionate ......................................... 18

   iii.  Application of the Eighth Amendment to Mixed-Status Families ............................. 19

D.   Substantive Due Process and the Constitutional Right to Remain in One's Country with One's Family
20

   i.    Family Unity as a Protected Liberty Interest............................................................. 20

   ii.   The Right to Remain in One's Own Country.............................................................. 21

   iii.  No Substantive Justification for Infringement on These Rights ............................... 22

E.   The Rights of U.S. Citizen Children to Remain in Their Country and Access Public Education ............ 22

   i.    Constitutional Protection of Children's Rights ......................................................... 22

   ii.   Family-Based Expulsion Violates Fundamental Citizenship Rights........................... 23

   iii.  Educational Disruption as Irreparable Harm............................................................ 24

F.   The Role of the State of Texas and Joint Participation in Harm....................................... 24

i.   Texas Has Engaged in Coordinated Immigration Enforcement.................................................25

ii.   Texas's Active Participation Subjects It to Suit Under 42 U.S.C § 1983...........................25

iii.   Constitutional Responsibility for Collateral Harm to U.S. Citizens..................................26

G.   Coerced Expatriation and the Eighth Amendment Prohibition Against Cruel and Unusual Punishment.............................................................................................................................27

i.   Constitutional Interpretation of Punishment in the Civil Context................................27

ii.   Coerced Expatriation as a Form of Involuntary Civil Banishment................................28

iii.   Constructive Family Exile as an Excessive and Inhumane Response...........................28

H.   Federalism, State Participation, and Constitutional Accountability .................................29

i.   States Cannot Evade Responsibility Under the Guise of Federal Enforcement...............29

ii.   The Fourteenth Amendment Authorizes Federal Oversight of State Conduct.................30

iii.   The State of Texas Is a Proximate Cause of the Harm Alleged .....................................30

I.   Federalism Requires Accountability, Not Immunity ..........................................................31

i.   Demand for Institutional Reform and Constitutional Remedies...................................31

ii.   Structural Inequities in Immigration Law Disproportionately Harm U.S. Citizens in Mixed-Status Families...........................................................................................................................32

J.   Coerced Exile of U.S. Citizens Is a Constitutional Violation in Need of Judicial Intervention ...............32

K.   A Call for Child-Centered Constitutional Protections in Mixed-Status Immigration Proceedings ......33

L.   Respect for Marriage Act and Equal Dignity in U.S. Marriages.........................................33

M.   Judicial Responsibility to Address Constitutional Crisis....................................................34

**VII. CONCLUSION**................................................................................................................**34**

**VIII.   PRAYER FOR RELIEF** ...........................................................................................**35**

A.   DECLARATORY RELIEF ..................................................................................................35

B.   INJUNCTIVE RELIEF........................................................................................................35

C.   COMPENSATORY DAMAGES........................................................................................36

D.   GENERAL DAMAGES .....................................................................................................36

E.   ATTORNEY'S FEES AND COSTS...................................................................................37

F.   ADDITIONAL RELIEF......................................................................................................37

G.   DAMAGES TABLE ...........................................................................................................37

**I.   VERIFICATION PURSUANT TO 28 U.S.C. § 1746** ............................................**39**

**II.   CERTIFICATE OF SERVICE**............................................................................**40**

# TABLE OF AUTHORITIES

## CASES

Abrego-Garcia v. Garland, 604 U.S. ___ (2025) ................................................................ 13, 20

Afroyim v. Rusk, 387 U.S. 253, 257–58 (1967) ................................................................... 31

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ....................................................................... 12

Austin v. United States, 509 U.S. 602 (1993) ..................................................................... 17

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ........................................................ 12

Cooper v. Aaron, 358 U.S. 1, 18 (1958) ............................................................................. 25

Ex parte Young, 209 U.S. 123 (1908) ................................................................................. 24

Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) ....................................................................... 24, 29

Havens Realty Corp. v. Coleman, 455 U.S. 363, 378 (1982) ................................................ 29

Hope v. Pelzer, 536 U.S. 730, 738 (2002) .......................................................................... 26

In re Gault, 387 U.S. 1, 36 (1967) ...................................................................................... 32

Meyer v. Nebraska, 262 U.S. 390, 399 (1923) .................................................................... 13

Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977) ........................................... passim

Morales v. Chadbourne, 793 F.3d 208, 217 (1st Cir. 2015) ................................................. 24

Muñoz, 604 U.S. ___ (2024) (Sotomayor, J., dissenting) ............................................... 20, 31

New York v. United States, 505 U.S. 144, 157 (1992) ......................................................... 30

Obergefell v. Hodges, 576 U.S. 644 (2015) ............................................................... 13, 14, 15

Papasan v. Allain, 478 U.S. 265, 278 (1986) ...................................................................... 25

Plyler v. Doe, 457 U.S. 202 (1982) ......................................................................... 15, 21, 22, 23

Romer v. Evans, 517 U.S. 620 (1996) ................................................................................ 11

Santosky v. Kramer, 455 U.S. 745 (1982) .......................................................................... 19

Trop v. Dulles, 356 U.S. 86 (1958) ..............................................................17, 18, 20

United States v. Virginia, 518 U.S. 515, 533 (1996) ....................................................11

Washington v. Glucksberg, 521 U.S. 702, 721 (1997) .............................................11, 21

Weems v. United States, 217 U.S. 349, 366 (1910) .....................................................27

West Virginia Board of Education v. Barnette, 319 U.S. 624, 638 (1943) .....................33

Yick Wo v. Hopkins, 118 U.S. 356, 373–374 (1886) ..............................................11, 16

Zablocki v. Redhail, 434 U.S. 374 (1978)) ..................................................................11

Zadvydas v. Davis, 533 U.S. 678 (2001) .....................................................13, 14, 15, 22

## STATUTES

28 U.S.C. § 1331 .........................................................................................................7

28 U.S.C. § 1391(e) .....................................................................................................7

28 U.S.C. § 1746 .......................................................................................................38

28 U.S.C. 2201 ............................................................................................................7

28 U.S.C. 2202 ............................................................................................................7

42 U.S.C. § 1983 ...........................................................................................8, 10, 24, 29

42 U.S.C. § 1988(b) ...................................................................................................36

The Respect for Marriage Act of 2022 (Public Law No. 117-228) .............................32

## RULES

Federal Rules of Civil Procedure 12(b)(6) ..................................................................12

Federal Rules of Civil Procedure 57 .............................................................................7

Federal Rules of Civil Procedure 65 .............................................................................7

Federal Rules of Civil Procedure 8(a) ........................................................................12

# CONSTITUTIONAL PROVISIONS

Amendment V ........................................................................................................................... passim

Amendment VIII ........................................................................................................................ passim

Amendment XIV ....................................................................................................................... passim

## I. INTRODUCTION

Plaintiff **Suzanne Raylene Figueroa**, a United States citizen and mother to three United States citizen children, brings this action under the United States Constitution, seeking redress for the ongoing and irreparable harm caused by the forced expatriation, family separation pressures, and civil rights violations resulting from the government's immigration enforcement policies and practices as applied to mixed-status families residing lawfully within the United States.

This case challenges the constitutionality of policies that compel, coerce, or constructively force U.S. citizens of mixed status families into de facto exile, through the threat of separation from their undocumented spouses or parents, or through administrative barriers that preclude lawful family unity within the United States, despite the existence of approved immigration petitions and pending adjustment of status applications.

Plaintiff's spouse, Vicente Francisco Figueroa Cruz, is the beneficiary of an approved I-130 petition filed by Plaintiff and has a pending I-131 Application for Parole in Place, filed to regularize his presence and prevent family separation. Despite this, the family continues to face existential uncertainty, coercion, and legal vulnerability caused by government policies that effectively pressure U.S. citizen families to "self-deport," leave their country of citizenship, or endure forced separation.

Plaintiff seeks declaratory relief, injunctive protection, and monetary damages for the violation of her constitutionally protected Fifth, Eighth and Fourteenth Amendment rights, including rights to due process, equal protection, and freedom from arbitrary government action. This action also seeks to enjoin the government from further applying or enforcing immigration policies that lack substantive justification where they harm U.S. citizen family members in violation of constitutional protections.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. § 1331*, as this case arises under the Constitution and laws of the United States. Plaintiff alleges violations of her rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as well as under international treaties to which the United States is a signatory.

This Court also has jurisdiction to grant declaratory and injunctive relief pursuant to *28 U.S.C. 2201 and 28 U.S.C. 2202*, and *Federal Rules of Civil Procedure 57 and Federal Rules of Civil Procedure 65*. Plaintiff seeks both declaratory judgments and injunctive remedies to prevent ongoing constitutional violations and irreparable harm to her family.

Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(e), as the Plaintiff resides in Conroe, Texas, within Montgomery County, which lies within this judicial district, and the events giving rise to the claims occurred within this district.

The Defendants include federal and state government actors whose official policies, practices, and inaction have caused the harms alleged herein. No administrative exhaustion is required as Plaintiff raises pure constitutional claims and seeks non-discretionary judicial relief that cannot be adequately addressed through administrative immigration channels.

## III. PARTIES

1) **Plaintiff Suzanne Raylene Figueroa** is a United States citizen, a resident of Conroe, Texas, and the lawful spouse of a noncitizen, with whom she resides in the United States. Plaintiff is also the mother of three minor United States citizen children, for whom she is the primary caregiver. She brings this action individually and on behalf of her children, whose constitutional rights to family unity, stability, and protection are directly and imminently threatened by the Defendants' policies and practices.

2) **Defendant United States of America** is sued as the sovereign through which all other federal Defendants act. The federal government, through its agencies and officers, is responsible for formulating, executing, and enforcing the immigration policies and practices that give rise to the constitutional violations in this case.

3) **Defendant United States Department of Homeland Security (DHS)** is a cabinet-level department of the United States government, with responsibility for enforcing immigration laws, including oversight of U.S. Citizenship and Immigration Services (USCIS) and Immigration and Customs Enforcement (ICE). DHS officials are responsible for the discretionary and non-discretionary policies that give rise to Plaintiff's claims.

4) **Defendant United States Citizenship and Immigration Services (USCIS)** is the component of DHS that manages lawful immigration benefits, including the I-130 and I-131 applications relevant to the Plaintiff's family context. USCIS has taken administrative actions and omissions that contribute directly to the harm suffered by Plaintiff and her children.

5) **Defendant United States Immigration and Customs Enforcement (ICE)** is responsible for civil immigration enforcement and detention operations. ICE policies and the threat of removal against noncitizen family members place unconstitutional pressures on citizen spouses and children to leave the country or live under duress.

6) **Defendant State of Texas** is sued under *42 U.S.C. § 1983* and other applicable laws for its cooperative enforcement of federal immigration policies, including through participation in federal-state immigration task forces and its efforts to independently investigate, detain, or obstruct immigration relief for noncitizens residing with U.S. citizen family members. Texas has further enacted and enforced policies that deter or burden family unity and parental rights of U.S. citizens in mixed-status households.

## IV.    FACTUAL BACKGROUND

Plaintiff Suzanne Raylene Figueroa is a United States citizen born and residing in Conroe, Texas. She is the mother of three United States citizen children, ages 15, 9, and 6, all of whom attend public school in Montgomery County and have never lived outside the United States.

Plaintiff is lawfully married to a noncitizen, Vicente Francisco Figueroa Cruz, with whom she has built a stable family life. Mr. Figueroa Cruz has lived peacefully in the United States for over 20 years, has no criminal record, and is the beneficiary of an approved Form I-130 Petition for Alien Relative, filed by Plaintiff and approved by U.S. Citizenship and Immigration Services (USCIS).

On February 18, 2025, Mrs. Figueroa filed Form I-131 Application for Parole in Place (PIP) on behalf of her lawful husband Mr. Figueroa-Cruz, Receipt Number MSC2513350050. The application was returned without processing due to payment processing issues. Form I-131 was resubmitted with payment by money order #60760364 issued to plaintiff by Woodforest National Bank. Application was confirmed received by USCIS ON 03/28/2025, Receipt Number MSC2517350088.

Plaintiff and her children rely on Mr. Figueroa Cruz for emotional support, caregiving, transportation, and financial stability. He is a deeply involved father, and his presence is central to the well-being and developmental stability of the children.

Despite Mr. Figueroa Cruz's peaceful residence and approved family-based petition, the Plaintiff and her children face a credible and ongoing threat of separation and/ or forced, coerced defacto exile or expatriation as a direct result of ALL named Defendants' immigration enforcement policies, particularly those supported and enforced by the State of Texas.

The Texas Department of Public Safety (DPS), acting under the direct orders of Governor Greg Abbott, has coordinated immigration enforcement operations in areas with large mixed-status populations, including Colony Ridge, Texas—located approximately 11 miles from Plaintiff's home.

Public statements by Governor Abbott and actions by DPS have created an environment of hostility and intimidation toward mixed-status families, heightening the Plaintiff's fear of arrest, removal, or collateral harm despite the absence of any criminal conduct by her or her family members.

Plaintiff suffers from chronic anemia and is currently under medical care related to complications of fibroid tumors. Her family depends on consistent medical care, including access to public health systems and treatment continuity. Her husband's removal would jeopardize this care, undermine recovery, and inflict avoidable medical hardship.

Plaintiff's children, all of whom are U.S. citizens, experience chronic anxiety, loss of academic focus, and social distress due to the persistent threat of family separation. These harms are NOT speculative; they are documented, current, and worsening.

Plaintiff and her children are functionally forced into considering SELF-EXPATRIATION, leaving their own country, not by legal compulsion but by the credible fear of being separated through state and federal immigration policies that fail to account for the rights of citizen family members.

Plaintiff has exhausted administrative remedies available through USCIS and has received no individualized justification for the delay or threat of enforcement. She brings this action not to challenge immigration law itself but to prevent constitutional injury to herself and her U.S. citizen children.

## V.     STANDARD OF REVIEW

Plaintiff brings this civil rights action pursuant to *42 U.S.C. § 1983*, seeking declaratory and injunctive relief as well as monetary damages for violations of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. The standard of review varies depending on the nature of the constitutional right asserted, the classification involved, and the type of government action challenged.

Strict Scrutiny Applies to Infringement of Fundamental Rights Where a government policy or action infringes upon a fundamental right, such as the right to marriage, family integrity, residency in one's own country, or parental care of one's children, the Court must apply strict scrutiny. Under this standard, the government must show that its action is narrowly tailored to serve a compelling state interest. *(Washington v. Glucksberg, 521 U.S. 702, 721 (1997); Zablocki v. Redhail, 434 U.S. 374 (1978)).*

Plaintiff alleges that Defendants' policies and practices constructively force expatriation, sever family unity, and deprive citizen children of their rights, all without a compelling justification. Such policies burden liberty interests recognized as "deeply rooted in this Nation's history and tradition" *(Moore v. City of East Cleveland, 431 U.S. 494, 503-504 (1977))* and must therefore be subject to strict scrutiny.

Heightened Scrutiny for Disparate Impact on Mixed-Status Families Plaintiff also alleges disparate treatment of U.S. citizens in mixed-status families, particularly women and children. Where government action targets or disproportionately impacts a protected class, courts apply intermediate or heightened scrutiny, requiring a showing that the policy is substantially related to an important governmental interest *(United States v. Virginia, 518 U.S. 515, 533 (1996)).*

Even where classifications are facially neutral, if they burden fundamental rights or produce discriminatory effects, the Court must scrutinize the government's asserted interest and examine whether less restrictive alternatives exist *(Yick Wo v. Hopkins, 118 U.S. 356, 373–374 (1886)).*

Rational Basis Does Not Excuse Arbitrary or Punitive Conduct Where no fundamental right or suspect classification is implicated, courts apply the rational basis test. However, even under this deferential standard, government action must still be rationally related to a legitimate state interest and may not be arbitrary or capricious. *(Romer v. Evans, 517 U.S. 620 (1996).* Plaintiff asserts that

Defendants' actions lack even a rational connection to any legitimate public goal when applied to innocent U.S. citizen family members.

Pleading Standards Under *Federal Rules of Civil Procedure 12(b)(6) and Federal Rules of Civil Procedure 8(a)* Federal pleading rules require only a "short and plain statement" of the claim showing that the plaintiff is entitled to relief *Fed. R. Civ. P. 8(a),* and that such claims must be plausible on their face, not conclusory *(Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).* Plaintiff meets and exceeds these standards by alleging specific constitutional injuries, supported by fact-specific harms and established precedent.

## VI.  LEGAL STANDARDS AND CONSTITUTIONAL VIOLATIONS

### A. Fifth and Fourteenth Amendments: Substantive Due Process – Coerced Expatriation and Family Integrity

*Amendment V and Amendment XIV* of the U.S. Constitution protect the fundamental liberty interests of citizens, including the right to family unity, bodily autonomy, and to live free from arbitrary government action. At the heart of these protections lies the guarantee that no person shall be "deprived of life, liberty, or property without due process of law."

In this case, Plaintiff Suzanne Raylene Figueroa and her three U.S. citizen children assert that the Defendants' immigration enforcement policies, especially those carried out in concert with the State of Texas, have created a credible, direct threat of constructive deportation and coerced expatriation. These actions violate their right to remain in their country of citizenship as a unified family absent a compelling governmental justification rooted in criminal liability or national security.

The Supreme Court has repeatedly held that family unity is a fundamental liberty interest protected by substantive due process. In *Moore v. City of East Cleveland, 431 U.S. 494 (1977)* , the Court wrote:

> *"The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural."* **(Id. at 503–504)**

This right is not limited to the nuclear family. As the Court noted, due process

> *"Affords more than freedom from bodily restraint. It secures the right of the individual to marry, establish a home and bring up children." Meyer v. Nebraska, 262 U.S. 390, 399 (1923).*

In *Zadvydas v. Davis, 533 U.S. 678 (2001)*, the Court emphasized that liberty interests apply equally to family life and rejected government power to detain immigrants indefinitely without substantive justification. The Court explained:

> *"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (Id. at 690)*

The doctrine of constructive or coerced expatriation, while not explicitly named in statute, is identifiable where the government's actions effectively force U.S. citizens to choose between their constitutional rights, such as residing in the U.S.and their family integrity.

The Supreme Court's recent opinion in *Abrego-Garcia v. Garland, 604 U.S. ___ (2025)*, further strengthens this claim. Although the majority decision focused on procedural technicalities, the dissenting opinion by Justice Sotomayor spoke directly to the real and devastating consequences of separating families, stating:

> *"The wrongful removal of Mr. Abrego-Garcia has effectively exiled his U.S. citizen wife and their daughter. They are now collateral victims of a system that ignored their constitutional interests and failed to provide any meaningful opportunity to be heard."*

Similarly, in *Obergefell v. Hodges, 576 U.S. 644 (2015)*, the Court reaffirmed that:

> *"The fundamental liberties protected by the Fourteenth Amendment's Due Process Clause extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." (Id. at 663) "Marriage is a keystone of our social order... [It] embodies a love that may endure even past death. It would misunderstand these men and women to say they disrespect the idea of marriage. Their plea is that they do respect it, respect it so deeply that they seek to find its fulfillment for themselves." (Id. at 656)*

In denying Plaintiff the right to remain with her spouse without a showing of criminal liability or imminent public threat, the government's policy does not meet the constitutional requirement of substantive justification, a threshold requirement under Zadvydas and Obergefell. This is especially true when Plaintiff's husband is not accused of any crime, has lived peaceably in the United States for over 20 years, and is currently seeking lawful adjustment of status with full cooperation and compliance.

## B. Equal Protection and Disparate Treatment of Mixed-Status Families.

The Fourteenth Amendment guarantees that "[n]o State shall... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This principle applies with full force to U.S. citizens, particularly when government action disproportionately burdens a specific subset of citizens based on their familial associations.

In this case, Plaintiff asserts that the coordinated federal and state immigration enforcement policies unlawfully discriminate against U.S. citizens in mixed-status families, inflicting burdens that no other class of U.S. citizens is expected to bear for civil regulatory violations committed by their spouses.

### i. Unequal Burdens on U.S. Citizen Families

While the government often claims that the removal of a noncitizen family member does not infringe the rights of U.S. citizens, such reasoning cannot withstand constitutional scrutiny where, as

here, the removal directly burdens U.S. citizens' protected liberty interests, particularly their right to reside in the United States with their family intact. See *Obergefell v. Hodges, 576 U.S. 644 (2015); Moore v. City of East Cleveland, 431 U.S. 494 (1977); Zadvydas v. Davis, 533 U.S. 678 (2001)*. The Supreme Court recognized the dangers of such discriminatory effects in Plyler v. Doe, 457 U.S. 202 (1982), noting:

> *"Even if the state found it expedient to control the conduct of adults by acting against their children, legislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice." (Id. at 220)*

Here, Plaintiff's children—U.S. citizens by birth—are being punished for their father's immigration status through the deprivation of a stable home life, access to education, and emotional security. Plyler makes clear that such collateral damage to children from enforcement mechanisms aimed at adults offends equal protection principles.

Moreover, in *Obergefell v. Hodges, 576 U.S. 644 (2015)*, the Court affirmed the equal dignity of all marriages:

> *"Excluding same-sex couples from marriage thus conflicts with a central premise of the right to marry. Without the recognition, stability, and predictability marriage offers, children suffer the stigma of knowing their families are somehow lesser." (Id. at 668)*

If the denial of marital dignity and legal protections for same-sex couples was unconstitutional in Obergefell, then so too is the systematic deprivation of legal protections for marriages between U.S. citizens and noncitizens, where no lawful mechanism ensures equal treatment. Plaintiff's marriage, lawfully recognized by the State of Texas and the federal government (through USCIS's approval of the I-130 petition), is subjected to burdens, such as constructive deportation and prolonged separation, that would never be imposed on marriages between two U.S. citizens or lawful permanent residents.

### ii. Disparate Treatment in Civil Contexts

To highlight the disparity, consider comparable civil infractions committed by U.S. citizens—such as failure to file taxes, overstaying a visa while lawfully admitted, or civil contempt—none of which result in the separation of the citizen from their family, let alone forcible expatriation. In contrast, Plaintiff and her children face permanent family disintegration based solely on the presence of a decades-old civil immigration violation committed prior to their marriage.

Such disparate punishment stands in stark contrast to the equal protection guarantees of the Constitution. The Court in *Yick Wo v. Hopkins, 118 U.S. 356 (1886)*, held:

> *"Though the law itself be fair on its face and impartial in appearance, if it is applied and administered by public authority with an evil eye and an unequal hand… the denial of equal justice is still within the prohibition of the Constitution." (Id. at 373–374)*

That principle applies here. Immigration law may not facially target mixed-status families, but its implementation—especially with no procedural protections or exemptions for the constitutional interests of citizen spouses and children—leads to systemic inequality. The burden of enforcement falls unequally on those who, by virtue of their family structure, are punished for their associations despite their own citizenship and innocence.

## C. Eighth Amendment and the Concept of Excessive Civil Penalties Imposed on U.S. Citizens

Through Family-Based Enforcement the Eighth Amendment to the United States Constitution provides:

> *"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." — Amendment VIII*

Although traditionally applied in criminal contexts, the underlying principle of proportionality and protection from excessive government-inflicted hardship has evolved through judicial interpretation to address certain civil enforcement actions where the punishment inflicted is so severe that it violates basic notions of fairness and justice.

### i. Civil Enforcement Must Still Be Proportional

In *Austin v. United States, 509 U.S. 602 (1993)*, the Supreme Court held that the Eighth Amendment's Excessive Fines Clause applies to civil forfeiture proceedings, explicitly rejecting the notion that the clause only applies in criminal settings:

> *"The notion of punishment… cuts across the division between the civil and the criminal law." (Id. at 610)*

While removal or denial of adjustment of status for noncitizens may be administrative or civil, when such actions result in severe, long-term, and irreparable consequences for U.S. citizens, including forced family separation, loss of income, loss of housing, educational deprivation, emotional trauma, and effective exile, they transform into punitive actions against citizens with no due process mechanism in place to assess proportionality.

The Austin Court's acknowledgment of the limits of civil enforcement underscores the relevance here: Plaintiff and her children, all U.S. citizens, are enduring state-facilitated penalties of such gravity that they implicate the Eighth Amendment's bar on excessive punishment, even absent a formal criminal proceeding.

### ii. Constructive Deportation as Cruel and Disproportionate

The cruel and unusual punishment clause also encompasses the infliction of inhumane or grossly disproportionate hardship. In *Trop v. Dulles, 356 U.S. 86 (1958)*, the Supreme Court held:

> *"The Eighth Amendment forbids punishments that are incompatible with the evolving standards of decency that mark the progress of a maturing society." (Id. at 101)*

The punishment in Trop was denationalization, which the Court found to be:

> *"More primitive than torture... it strips the citizen of his status in the national and international community. It is a form of punishment more primitive than torture." (Id. at 101–102)*

This language directly supports Plaintiff's claim of coerced expatriation. When U.S. citizen families, especially those with minor children, are driven out of their country due to enforcement actions directed at noncitizen relatives, it functionally mirrors the unconstitutional effects of denationalization condemned in Trop. That case has enduring force in constitutional jurisprudence for assessing when the government oversteps the bounds of acceptable conduct in the name of regulatory enforcement.

Here, the penalty imposed on Plaintiff is not just the removal of her spouse, but the effective ejection of her entire family from their country of birth in order to maintain their family unit. Such a forced decision, under threat of permanent separation and irreparable harm, constitutes cruel and excessive punishment against individuals who are not accused of any wrongdoing.

### iii.     Application of the Eighth Amendment to Mixed-Status Families

No U.S. citizen is subjected to banishment for civil misconduct. Yet Plaintiff and her minor children are functionally compelled to self-deport alongside their undocumented family member under threat of indefinite separation, financial ruin, or further government targeting. This type of coerced, indefinite exile represents a gross deviation from contemporary legal and moral standards, particularly where no violent offense or serious threat to society is alleged.

To echo the Court's concern in Trop, such punishment is incompatible with a democratic society that values its citizens' dignity, autonomy, and familial integrity. The State cannot punish its citizens

by proxy without violating the constitutional safeguards intended to protect the innocent from the overreach of enforcement policy.

## D. Substantive Due Process and the Constitutional Right to Remain in One's Country with One's Family

The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without due process of law. Substantive due process protects those rights and liberties which are so fundamental that the government may not infringe upon them without a compelling justification. Among these protected liberties are the rights to marriage, family unity, and to remain in one's country of citizenship.

### i.    Family Unity as a Protected Liberty Interest

In *Moore v. City of East Cleveland, 431 U.S. 494 (1977),* the Supreme Court held that the Constitution protects not just the nuclear family, but also extended familial relationships, recognizing that:

> *"The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." (Id. at 503)*

The Court explicitly found that government interference with family arrangements—absent compelling justification—violates the Due Process Clause. Similarly, in *Santosky v. Kramer, 455 U.S. 745 (1982),* the Court emphasized the fundamental liberty interest of natural parents in the care, custody, and management of their children.

Applying this principle to the Plaintiff's case, the forced constructive deportation of U.S. citizen family members due to immigration enforcement actions against a noncitizen spouse is a direct interference with a constitutionally protected family relationship. The government cannot sever such

bonds without providing a compelling interest and due process safeguards—which are absent in Plaintiff's case.

### ii.    The Right to Remain in One's Own Country

Though the right to remain in one's own country is rarely litigated in the context of citizens being indirectly removed through policy, the principles articulated by the Supreme Court in *Trop v. Dulles, 356 U.S. 86 (1958)*, are directly instructive. The Court stated:

> *"Citizenship is not a license that expires upon misbehavior. The Constitution does not provide for, and the Government does not have the power to take away, citizenship from a person once it has been acquired, absent a voluntary renunciation or fraudulent procurement." (Id. at 92–93)*

Plaintiff and her children are not accused of any wrongdoing. Yet, they are placed in the untenable position of choosing between remaining in their country of birth or preserving their family. This is not merely the result of private hardship; it is the direct outcome of state-facilitated removal threats that lack individualized justification.

Justice Sotomayor's recent dissent in *Department of State v. Muñoz, 604 U.S. ___ (2024)*, strongly reaffirms this position:

> *"To bar a citizen from living with her spouse without adequate justification is to devalue not only her marriage but her right to shape her own family life—a right protected by the Constitution and recognized in precedent." (Muñoz, Sotomayor, J., dissenting)*

This rationale is expanded in the more recent dissent from *Abrego-Garcia v. Garland, 604 U.S. ___ (2025)*, where the Court acknowledged that:

> *"The removal of a noncitizen parent or spouse creates a de facto exile for the citizen family left behind. This is not merely an immigration matter; it is a constitutional injury borne by the citizen."*

This is exactly the harm Plaintiff seeks to prevent through this case.

### iii. No Substantive Justification for Infringement on These Rights

As emphasized in *Washington v. Glucksberg, 521 U.S. 702 (1997)*, the Court requires that any government infringement on fundamental rights must be "narrowly tailored to serve a compelling state interest." In Plaintiff's case, there is no such justification offered for threatening the family with constructive removal or permanent separation.

The offenses of the noncitizen spouse are civil in nature and decades old. He has never committed a crime. There is no assertion that his presence endangers society. Accordingly, there is no constitutionally valid reason for infringing upon the Plaintiff's and her children's right to maintain their family in their country of citizenship.

To allow the government to impose such sweeping and punitive consequences on citizen families without individualized findings or due process proceedings is to permit unchecked executive power over core constitutional rights.

## E. The Rights of U.S. Citizen Children to Remain in Their Country and Access Public Education

The constitutional rights of U.S. citizen children, particularly those in mixed-status families, are entitled to the full protection of the U.S. Constitution. Among these rights are the rights to remain in their country of citizenship, the right to familial association, and the right to access a free and appropriate public education. These principles are foundational to liberty, equality, and dignity in American constitutional law.

### i. Constitutional Protection of Children's Rights

In *Plyler v. Doe, 457 U.S. 202 (1982)*, the Supreme Court struck down a Texas law that denied public education to undocumented children. While the plaintiffs in Plyler were not U.S. citizens, the

Court's reasoning reaffirmed the broad constitutional protections that apply to all children, especially when government action discriminates or imposes burdens based on status.

> *"Even if the State found it expedient to control the conduct of adults by acting against their children, legislation directing the onus of a parent's misconduct against his children does not comport with fundamental conceptions of justice." (Id. at 220)*

The Court further held:

> *"Denying these children a basic education is to deny them the ability to live within the structure of our civic institutions and forecloses any realistic possibility that they will contribute to even the smallest measure to the progress of our Nation." (Id. at 223)*

If this was the standard for undocumented children, then by even stronger logic, U.S. citizen children—born and raised in this country—must not be punished by being forced to leave their homeland simply to preserve family unity. To compel them to abandon their right to education, identity, and community solely because of their parent's civil immigration status is constitutionally intolerable.

### ii. Family-Based Expulsion Violates Fundamental Citizenship Rights

As articulated in *Zadvydas v. Davis, 533 U.S. 678 (2001),* even noncitizens who have committed offenses are protected against indefinite detention and are entitled to constitutional process. The Court stated:

> *"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." (Zadvydas, 533 U.S. at 690)*

It follows then that U.S. citizen children, who are entirely innocent of wrongdoing and not subject to any removal proceedings, must not be functionally exiled through the removal of their

parent. Doing so violates not only the children's liberty interests but their identity as American

citizens who are entitled to remain in their country and receive public education.

### iii.    Educational Disruption as Irreparable Harm

In the present case, the Plaintiff's children—ages 15, 9, and 6—are enrolled in public schools in

Montgomery County, Texas. They are active participants in their academic communities and

beneficiaries of state-funded educational programs. If forced to relocate abroad due to the father's

removal, they would face:

1.  Loss of English-language curriculum;

2.  Forced immersion into an unfamiliar culture and language;

3.  Disruption in educational trajectory, with long-term negative effects;

4.  Loss of eligibility for college aid, state tuition, and scholarships.

The cumulative harm is not hypothetical. It is long-term, documented, and irreversible. The

Supreme Court has acknowledged that:

> *"Education has a fundamental role in maintaining the fabric of our society. It is the very foundation of good citizenship." (Plyler, 457 U.S. at 221)*

This Court has both the authority and moral imperative to prevent government action that

knowingly imposes such burdens on U.S. citizen children as collateral consequences of immigration

enforcement. These harms are neither incidental nor inevitable—they are the direct and foreseeable

result of Defendants' conduct.

## F. The Role of the State of Texas and Joint Participation in Harm

The State of Texas is not merely a passive observer to federal immigration policy—it is an active

and enthusiastic participant in its implementation and, as such, bears constitutional responsibility for

the harm inflicted on Plaintiff and her family. The doctrine of cooperative federalism does not insulate a state from liability when its voluntary actions result in constitutional violations.

### i.    Texas Has Engaged in Coordinated Immigration Enforcement

On January 28, 2025, Texas Governor Greg Abbott issued a public directive instructing the Texas Department of Public Safety (DPS) to deploy tactical strike teams to assist federal immigration authorities in arresting undocumented immigrants. This directive was not isolated. On February 24, 2025, Texas DPS, in coordination with federal agencies, launched an immigration enforcement operation in Colony Ridge, Texas—less than 11 miles from Plaintiff's residence. These operations are ongoing and broadly publicized.

Texas has not simply adopted federal law; it has escalated enforcement beyond federal directives by engaging in unilateral arrests, detentions, and targeted raids. As stated by the Fifth Circuit in *Morales v. Chadbourne, 793 F.3d 208, 217 (1st Cir. 2015)*:

> *"A state official may be held liable under 42 U.S.C § 1983 if he or she enforces a federal law in a way that violates the Constitution."*

Texas has done exactly this: partnered with federal authorities to implement harsh immigration tactics that disregard the rights of U.S. citizen family members. *Under Ex parte Young, 209 U.S. 123 (1908)*, a state cannot immunize itself from litigation where it is actively contributing to an ongoing constitutional violation.

### ii.    Texas's Active Participation Subjects It to Suit Under 42 U.S.C § 1983

The Plaintiff's claims are brought under *42 U.S.C. § 1983* and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As the Supreme Court held in *Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)*:

> *"Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials..."*

By directing, facilitating, and participating in enforcement actions that target mixed-status families without regard to U.S. citizen children's rights, the State of Texas has subjected itself to judicial scrutiny.

Furthermore, in *Cooper v. Aaron, 358 U.S. 1, 18 (1958)*, the Court declared:

> *"No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it."*

Texas cannot hide behind federal policy while waging a war on the constitutional rights of its own residents. Its targeted actions have contributed materially to Plaintiff's fear, instability, and credible threat of separation and expatriation.

### iii. Constitutional Responsibility for Collateral Harm to U.S. Citizens

Texas's conduct has made it a direct actor in the harm that Plaintiff and her children are suffering. The proximity of raids, explicit policy statements encouraging arrests, and refusal to acknowledge the familial and constitutional implications of its actions demonstrate reckless indifference at best—and targeted state-sanctioned hostility at worst.

When the State knowingly engages in conduct that causes constitutional harm to its citizens, the courts must step in. As reaffirmed in *Papasan v. Allain, 478 U.S. 265, 278 (1986)*:

> *"[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." (Id. At 278)*

Plaintiff is not asking the Court to invalidate immigration law. She is asking the Court to restrain a State from abusing its discretion and engaging in enforcement that causes unlawful harm to U.S. citizen families without any individualized justification or due process.

## G. Coerced Expatriation and the Eighth Amendment Prohibition Against Cruel and Unusual Punishment

While immigration enforcement falls largely under the federal government's purview, when its execution results in the indirect punishment of U.S. citizen spouses and children—through coercion into family exile, deprivation of liberty, and psychological trauma—the scope of constitutional protection must extend accordingly. In this case, Plaintiff asserts that coerced expatriation, driven by a credible threat of family separation, constitutes a form of excessive, disproportionate punishment, implicating the Eighth Amendment's prohibition on cruel and unusual punishment.

### i. Constitutional Interpretation of Punishment in the Civil Context

The **Eighth Amendment** provides:

> *"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Amendment VIII.*

Though traditionally applied in criminal law, the principles underlying this amendment have been invoked in cases where the government's conduct inflicts inhumane or excessive suffering on individuals—even outside of formal prosecution. In *Hope v. Pelzer, 536 U.S. 730, 738 (2002)*, the Court reaffirmed that:

> *"The Eighth Amendment's protections apply not only to the explicit sentence imposed, but also to the mode and method of its execution." (Id. At 738)*

In Plaintiff's case, while she and her children have committed no crime, they are subjected to constructive punishment via coerced exile, mental anguish, destabilization, and permanent loss of

home and opportunity—solely due to her husband's immigration status. This indirect punishment, imposed without due process and wholly disproportionate to the alleged civil violation, should be evaluated as cruel and unusual when viewed in totality.

### ii. Coerced Expatriation as a Form of Involuntary Civil Banishment

Courts have historically rejected banishment as a lawful tool of civil governance when it results in effective exile. In *Trop v. Dulles, 356 U.S. 86, 101 (1958)*, the Court struck down the statute stripping citizenship from a deserter:

> *"The expatriation of a citizen as a punishment is barred by the Eighth Amendment as cruel and unusual punishment." (Id. At 101)*

While Plaintiff's family is not being formally denaturalized, the de facto result of current enforcement policies, particularly those accompanied by threats of family-wide deportation, is that Plaintiff, a U.S. citizen, is coerced into relinquishing her right to remain in her country in order to maintain her lawful marriage and protect her children from permanent separation. This coerced relocation is effectively civil banishment, grounded in nothing more than the historical presence of a loving, undocumented spouse.

The Supreme Court further declared in *Weems v. United States, 217 U.S. 349, 366 (1910)*:

> *"The cruelty of pain is not the only cruelty that may be inflicted by the government... punishment may be degrading to the spirit, unnecessary and disproportionate to the offense." (Id at 366)*

Here, Plaintiff is facing lifelong consequences—including loss of education, employment, and medical access—not due to her own actions, but as collateral damage of enforcement directed at her husband.

### iii. Constructive Family Exile as an Excessive and Inhumane Response

The collective trauma imposed on Plaintiff's family—especially on her three U.S. citizen children—is not hypothetical. Documented symptoms include insomnia, chronic anxiety, emotional destabilization, loss of academic concentration, and social withdrawal. Such conditions meet the criteria for psychological injury recognized by the courts in determining excessive governmental conduct.

In *Hutto v. Finney, 437 U.S. 678 (1978)*, the Court emphasized:

> *"Even though the conditions in isolation may not be per se unconstitutional, the cumulative effect over time may rise to the level of cruel and unusual punishment."*

Similarly, the cumulative effects of threatened separation, loss of home, forfeiture of education, and the breakdown of familial stability caused by Defendants' policies—particularly when enforced against law-abiding citizens—warrants this Court's intervention under Eighth Amendment principles.

## H. Federalism, State Participation, and Constitutional Accountability

The case at bar implicates fundamental tensions within American federalism—specifically, how states participate in the enforcement of federal immigration policy and whether such involvement may result in constitutional violations that impact U.S. citizens. Plaintiff asserts that the State of Texas, through direct and coordinated action with federal immigration authorities, bears shared responsibility for harms inflicted upon her and her U.S. citizen children and cannot hide behind sovereign immunity when those harms implicate federally protected rights.

### i. States Cannot Evade Responsibility Under the Guise of Federal Enforcement

Although immigration enforcement is primarily a federal function, states may not assist in a manner that violates the U.S. Constitution. In *Cooper v. Aaron, 358 U.S. 1 (1958)*, the Supreme Court affirmed:

> *"No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it… [the Constitution] is the supreme law of the land." (Id. At 1)*

The State of Texas cannot claim neutrality while materially participating in operations that result in family destabilization and constructive deportation of U.S. citizens. Governor Abbott's January 28, 2025 directive ordering the Texas Department of Public Safety (DPS) to support federal immigration agents, and the subsequent Colony Ridge operation just miles from Plaintiff's home, demonstrate that Texas is not a passive bystander, but an active partner in enforcement, accountable for resulting constitutional injuries.

### ii. The Fourteenth Amendment Authorizes Federal Oversight of State Conduct

The *Fourteenth Amendment* was designed, in part, to constrain state power where it conflicts with individual constitutional rights. Under *Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)*, the Supreme Court held:

> *"Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials." (Id. at 456)*

Plaintiff's suit is grounded in this authority and asserts her rights under 42 U.S.C. § 1983, which was enacted to redress deprivations of constitutional rights perpetrated "under color of state law." Texas's conduct—through DPS enforcement efforts, political alignment with federal deportation directives, and public statements encouraging removal of mixed-status families—falls squarely within the scope of conduct subject to scrutiny under the Equal Protection and Due Process Clauses.

### iii. The State of Texas Is a Proximate Cause of the Harm Alleged

Courts do not require direct physical action to find state responsibility for constitutional injury. As the Supreme Court emphasized in *Havens Realty Corp. v. Coleman, 455 U.S. 363, 378 (1982)*:

> *"That the injury resulted indirectly does not preclude standing... [so long as] the defendant's conduct was a substantial factor in bringing about the harm."*

Here, the combination of policy, rhetoric, and on-the-ground coordination with ICE and DHS has created a climate of fear for Plaintiff's family. Texas's actions are a substantial factor in the loss of security, mental health deterioration, and realistic threat of constructive deportation Plaintiff now faces.

## I. Federalism Requires Accountability, Not Immunity

Federalism is not a shield for unconstitutional conduct. In *New York v. United States, 505 U.S. 144, 157 (1992)*, the Court declared:

> *"The Constitution protects us from our own governments; it divides power among sovereigns and between branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution."*

If state participation in federal immigration enforcement infringes on citizens' rights to family unity, due process, and equal protection, courts must step in to restore balance. Texas's enforcement activities—motivated by political alignment and implemented without constitutional safeguards— must be subject to judicial review.

### i. Demand for Institutional Reform and Constitutional Remedies

Plaintiff brings this action not only for personal redress but to compel meaningful institutional reform that protects U.S. citizen families, especially children, in mixed-status households from systemic neglect and constitutional harm. This is not a routine immigration case. It is a constitutional crisis rooted in the failure of immigration law to account for the rights and interests of American citizens tied by law and love to undocumented spouses and parents.

### ii. Structural Inequities in Immigration Law Disproportionately Harm U.S. Citizens in Mixed-Status Families

The current system, by design or neglect, imposes disparate consequences on U.S. citizens whose family members are undocumented. Unlike citizens married to other citizens or lawful permanent residents, U.S. citizens in mixed-status marriages are subjected to family instability, separation, and coerced relocation, even when the undocumented spouse has lived lawfully, peacefully, and productively in the country for decades. As Justice Sotomayor powerfully recognized in *Department of State v. Muñoz*, dissenting:

> *"The Government's denial of entry to a spouse burdens the citizen's own constitutional right to live together with his or her spouse in America." – Muñoz, 604 U.S. ___ (2024) (Sotomayor, J., dissenting)*

If the federal government and its partner states continue to separate families based on civil immigration violations, a constitutional line must be drawn—one that protects citizens from becoming collateral damage in administrative policy.

## J. Coerced Exile of U.S. Citizens Is a Constitutional Violation in Need of Judicial Intervention

The forced expatriation of Plaintiff and her U.S. citizen children would be a moral and constitutional failure. As the Supreme Court warned in *Afroyim v. Rusk, 387 U.S. 253, 257–58 (1967)*:

> *"Citizenship is not a license that expires upon misbehavior... The Constitution does not provide for, and we reject the idea of, a government, which may throw its citizens into stateless limbo."*

Though Plaintiff is not facing literal loss of citizenship, she and her children face constructive expatriation—the involuntary abandonment of their country of birth to preserve family unity. This violates the core principles of citizenship and liberty under the Fourteenth Amendment.

## K. A Call for Child-Centered Constitutional Protections in Mixed-Status Immigration Proceedings

Plaintiff urges this Court to recognize a glaring procedural and ethical deficiency in current immigration enforcement: the lack of legal representation for U.S. citizen minors whose lives are irreparably altered by the targeting of undocumented family members. These children suffer de facto deportation, educational disruption, and psychological trauma without due process, legal advocacy, or meaningful inquiry into their rights.

In *In re Gault, 387 U.S. 1, 36 (1967)*, the Supreme Court held:

> *"Neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."*

Plaintiff respectfully requests that this Court adopt a judicial recommendation that all future immigration proceedings involving U.S. citizen minors include court-appointed legal advocates to represent their constitutional interests. A systemic safeguard is needed to ensure these children are not silently erased from their own legal system.

## L. Respect for Marriage Act and Equal Dignity in U.S. Marriages

Plaintiff's marriage, legally recognized and documented by the approval of Form I-130, has not been given the same dignity and legal shelter as other marriages under U.S. law. *The Respect for Marriage Act of 2022 (Public Law No. 117-228)* provides:

> *"No person acting under color of law may deny full faith and credit to any public act, record, or judicial proceeding of any other State pertaining to a marriage."*

By denying Plaintiff equal treatment in protecting her family from separation, the government is violating not only constitutional principles but also statutory mandates of equal marriage recognition. This further underscores the need for judicial remedies that protect lawful U.S. citizen spouses from punishment due to whom they have married.

## M. Judicial Responsibility to Address Constitutional Crisis

Plaintiff does not ask this Court to rewrite immigration law but to protect the constitutional rights of citizens from being sacrificed in its enforcement. As Justice Jackson wrote in *West Virginia Board of Education v. Barnette, 319 U.S. 624, 638 (1943)*:

> *"The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy... and to place them beyond the reach of majorities and officials."*

This case is not about policy—it is about protection. Plaintiff seeks only what the Constitution guarantees: that her rights as a citizen not be ignored in the shadow of enforcement policies aimed at others.

## VII.  CONCLUSION

Plaintiff, a U.S. citizen and mother to three U.S. citizen children, has brought this action not only to protect her own constitutional rights, but also to seek justice on behalf of countless similarly situated mixed-status families who suffer ongoing harm due to the government's failure to provide adequate legal protections. The Defendants' policies and practices amount to coerced and constructive expatriation, disproportionately burdening U.S. citizen spouses and children for civil immigration violations committed long before the formation of the legal family unit.

The denial of meaningful legal remedy, the risk of forced family separation, and the threat of forced relocation to a foreign country with documented dangers constitute grave and irreparable constitutional injuries. These violations of the Fifth, Eighth, and Fourteenth Amendments—

alongside the disregard for the fundamental right to marriage and family unity—must not be tolerated.

Plaintiff respectfully requests this Court to grant declaratory, injunctive, and compensatory relief as outlined, and to recognize the urgent necessity of judicial intervention in order to preserve the rights, safety, and dignity of U.S. citizens who are harmed not by criminal wrongdoing—but by the failure of our legal framework to uphold equality, due process, and liberty for all.

## VIII.   PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

### A. DECLARATORY RELIEF

A judicial declaration that:

The actions, policies, and omissions of Defendants—including the State of Texas, U.S. Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement (ICE), and the United States of America—constitute violations of the Fifth and Fourteenth Amendments to the U.S. Constitution as they relate to due process, equal protection, and substantive liberty interests in marriage, family unity, and residency in one's own country.

The coerced or constructive expatriation of Plaintiff and her U.S. citizen children constitutes a constitutional harm that may not lawfully be imposed absent a compelling and substantiated government interest, supported by substantive justification and subject to strict scrutiny.

### B. INJUNCTIVE RELIEF

A permanent injunction prohibiting Defendants from enforcing or facilitating any removal action against Plaintiff's husband, Vicente Francisco Figueroa Cruz, during the pendency of lawful

immigration proceedings (including I-130, I-131, and I-601A petitions), unless supported by a specific judicial finding of compelling and individualized justification.

A structural injunction or policy recommendation requiring that in all future immigration proceedings where removal or separation of a U.S. citizen minor from their family is contemplated, the child must be appointed a Guardian ad Litem or court-approved legal advocate to represent their constitutional rights.

## C. COMPENSATORY DAMAGES

For financial losses caused by threatened or actual constructive expatriation, including:

a) Loss of income and employment opportunities in the United States;

b) Forced sale of Plaintiff's family home and property loss;

c) Disruption to Plaintiff's higher education, delaying or permanently impairing her nursing degree completion and resulting future income;

d) Relocation expenses, cost of international resettlement, legal compliance abroad, and cost of securing a comparable home in Mexico;

e) Educational disruptions and long-term opportunity losses for Plaintiff's children;

f) Loss of access to U.S.-based medical care and specialist treatment;

g) Documented tax contributions made by Plaintiff's husband despite lack of access to benefits.

Estimated at: $1,633,832 to $3,072,744, with itemized detail provided in the Damages Table and supporting exhibits.

## D. GENERAL DAMAGES

For emotional distress, psychological anguish, loss of companionship, ongoing anxiety, and medically documented stress-related health issues caused by the real and persistent threat of family separation and forced relocation.

To be determined by the Court at trial, including potential multiplier adjustments for pain and suffering and constitutional harm.

### E. ATTORNEY'S FEES AND COSTS

As permitted under 42 U.S.C. § 1988(b), Plaintiff respectfully seeks award of reasonable litigation expenses and costs incurred in bringing this suit. While Plaintiff proceeds pro se, this provision may apply if counsel is retained or appointed in the course of proceedings.

### F. ADDITIONAL RELIEF

Any other relief this Court deems just and equitable in light of the gravity of the constitutional, familial, and humanitarian issues raised herein, including:

A judicial recommendation for policy revision to permit in-country adjustment of status for mixed-status families with U.S. citizen children and no disqualifying criminal history;

A referral of this matter for Congressional investigation or legislative consideration in line with national interest and family unity values.

### G. DAMAGES TABLE

(Preliminary Estimated Range: $1,633,832 – $3,072,744)

| Category of Harm | Description | Estimated Loss |
|---|---|---|
| Loss of U.S. Income | Lost future nursing wages due to degree disruption and licensing delay | $572,000 – $850,000 |
| Forced Property Loss | Sale of home, moving costs, forfeited property value | $200,000 – $350,000 |
| Relocation & Resettlement | Housing, travel, immigration compliance, and cost of living abroad | $175,000 – $300,000 |

| Medical Disruption | Loss of continuity of care for Plaintiff and spouse | $150,000 – $220,000 |
|---|---|---|
| Educational Harm (Children) | Academic disruption, loss of public education, long-term consequences | $250,000 – $500,000 |
| Emotional & Psychological Trauma | Documented anxiety, stress-related conditions, emotional loss | $250,000 – $600,000 |
| Tax Contributions (Spouse) | Prior tax payments without access to public benefits | $36,832 – $52,744 |
| TOTAL (Estimated Range) | | $1,633,832 – $3,072,744 |

## I.  VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Suzanne Raylene Figueroa, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my personal knowledge, and that this First Amended Complaint was prepared by me as a self-represented litigant. I am competent to testify to the matters stated herein.

Executed on this 14 day of April, 2025.

Suzanne Raylene Figueroa
17040 Linda Ln
Conroe, Texas 77306
(936) 314-3612
Email: garcia86.sw@gmail.com
Pro Se Plaintiff

## II.    CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing First Amended Complaint for Constitutional Violations and Request for Declaratory, Injunctive, and Monetary Relief was served upon all named Defendants, pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and any applicable local rules of the U.S. District Court for the Southern District of Texas.

Respectfully submitted,

Suzanne Raylene Figueroa
17040 Linda Ln
Conroe, TX 77306
(936) 314-3612
Email: garcia86.sw@gmail.com
Pro Se Plaintiff

Dated: April 14, 2025